# Supreme Court of the Navajo Nation

**Dorothy A. Smith, Petitioner-Appellant,**
v.
**Red Mesa Unified School District No. 27,**
**Respondent-Appellee.**
**Decided May 25, 1995**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and TOLEDO* (*sitting by designation), Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock (Navajo Nation), Arizona, for the Appellant; and C. Benson Hufford, Esq., Flagstaff, Arizona, for the Appellee.

Opinion delivered by Yazzie, Chief Justice.

This is an appeal of a decision of the Navajo Nation Labor Commission ("Commission"). On March 8, 1994, the Commission dismissed the claims of Dorothy A. Smith ("Smith"), and this appeal follows.

### I

The facts of the record on appeal come from the Commission's judgment. Smith was employed by Red Mesa School District No. 27 ("district"), a political subdivision of the State of Arizona. She began work on July 1, 1985 as an assistant comptroller, and was promoted to comptroller in 1986. In 1992, the district appointed Smith as its "Administrator in Charge," in place of the district superintendent, when that position was open. Her position was renamed "Chief Administrative Officer" in October 1992, with an annual salary of $58,280. In 1993, the district hired a new school superintendent. Smith then resumed her prior duties as the district's business manager at a salary of $53,000 per annum.

The new superintendent discovered several problems and deficiencies in the school administration which were linked to Smith. The problems included: failure to provide for budget override, late submission of school budgets, failure to timely pay employee health insurance benefits, poor performance as reported in audits, budget errors, lack of reports to the school board, lack of required reports on financial condition to the Arizona Department of Education, over-expenditures of the budget, and failure to document and account for federal funding. The Commission affirmatively found that Smith had been informed of these deficiencies in writing on several occasions.

During her tenure as chief administrative officer and business manager, Smith

had a contract with the school district. On May 7, 1993, the district's school board approved contract renewals, including Smith's contract. At the instruction of the school board, the superintendent revised her position description as business manager to eliminate supervisory duties. The new position description carried a lower salary of $40,000 per annum and changed employment benefits. The district notified Smith of the new job description on June 20, 1993. The district offered her an opportunity to discuss and negotiate the new position description.

On July 13, 1993, the school board discussed the proposed changes with Smith "at some length." At another board meeting, held on August 10, 1993, the board approved Smith's contract for the upcoming school year in accordance with the new job description and salary. She was advised of the decision on August 11, 1993. On August 24, 1993, the district tendered the proposed contract, which contained this provision: "This Agreement, without alternations or changes, must be returned to the district within ten (10) days after receipt or the offer is revoked." Smith did not return the contract or contact the district regarding it. On September 10, 1993, the district informed Smith that because she had not returned the contract, the offer of employment was revoked and her employment terminated on September 10, 1993 at 5:00 p.m.

Following proceedings before the Navajo Nation Labor Commission, on March 8, 1994, the Commission dismissed Smith's petition under the Navajo Preference in Employment Act. The Commission affirmatively found, as conclusions of law, that the district demonstrated compliance with the Act by clear and convincing evidence, and that the district's actions were supported by just cause as required by the Act.

## II

Smith assigns four errors of law on appeal: First, written notice of an adverse employer action must contain a written statement of just cause for the adverse action. Second, the district's June 30, 1993 notice of reduction did not comply with the Navajo Preference in Employment Act. Third, the September 10, 1993 notice of termination did not comply with the Act. Fourth, the Act contains an implied requirement that prior to termination for unsatisfactory performance, an employee must be offered an "improvement plan" to give the employee a reasonable opportunity to bring work to an acceptable level. The Court restates the issues to be: First, did the notices Smith receive comply with due process of law under the Navajo Preference in Employment Act? Second, does the Act require either an "improvement plan" or a "progressive discipline" plan?

## III

The Navajo Preference in Employment, at section 4.B.8, states that: "All employers shall not penalize, discipline, discharge nor take any adverse action against any Navajo employee without just cause. A written notification to the

employee citing such cause for any of the above actions is required in all cases."

Smith argues that neither the June 20, 1993 notice of reduction nor the September 10, 1993 notice of termination contained the required statement of just cause. She points out further that an employee must file a charge showing a violation of the Act and present it in a hearing before the Commission, and that an employer's failure to fully notify an employee of the just cause supporting an adverse action denies her of due process of law.

Smith's contentions are measured against the purposes of due process of law, as reflected in the Act. The Navajo Nation Council made the policy determination that employment in the Navajo Nation is a valuable individual property right. This right cannot be denied by an employer without a showing of "just cause," and a statement of what that just cause happens to be in writing. The statement becomes relevant in a proceeding before the Commission, and an employer must know why the employee acted to make and pursue a claim under the Act. The statement of just cause also prevents employers from making ad hoc justifications for employee terminations. Our law requires employers to advise employees, in writing, of the reasons for terminating an employee's employment so employees may pursue their legal remedies under the Act.

At oral argument, Smith's counsel was asked if she objected to a lack of knowledge of the reason for the actions taken against her in proceedings before the Commission. The answer was that she had not. The counsel for the district pointed to a large ring binder of documents given to Smith to advise her of work deficiencies, which were introduced into evidence before the Commission. The Court finds that Smith fully understood the basis for the district's actions and that she received fair notice of the grounds of her eventual termination. She was not disadvantaged in the presentation of her wrongful discharge case, and she proceeded on the full merits of her claims.

The purposes of notice as an element of due process are to inform an individual of the basis for adverse action and to allow that person to pursue legal remedies with an understanding of what facts the employee must address. If the employee does not know why adverse action is taken, both due process and the Act are violated. If, however, the employee knows the reasons for the employer's action, in either the notice under the Act or contemporaneous documents, then due process and the Act are satisfied. The employee must, at minimum, be able to point to written declarations by the employer which explain the reasons for the adverse action taken. Once the employer has stated reasons for the employment termination, it is bound by them and cannot come forward with new justifications.

Under the Act, any adverse action by an employer, such as imposing penalties, discipline or firing an employee, is serious. Section 4.B.8 requires the employer to inform the employee, in writing, of the justification for the adverse action. In later proceedings, the employer must show compliance with the Act by clear and convincing evidence.

The purposes of section 4.B.8 were satisfied in this case. Smith had a suffi-

cient understanding of the district's reasons for its actions prior to when they were taken, and she was served written documents that showed the precise reasons for both the demotion and the contract based on the new job description. She was not disadvantaged in pursuing her claims on the merits.

Further, the Commission affirmatively found that the district was in compliance with the Act. Its reading of the statute is reasonable. The Act's purposes were fulfilled; thus, Smith was not denied a fair hearing before the Commission.

## IV

We will not accept Smith's invitation to read an "improvement plan" or a "progressive discipline" plan into the Act when the Commission rejected her claims. Smith had a full opportunity to present a theory to the Commission as an element of just cause. One of the principles of administrative law which underlies the Act is administrative adjudicatory bodies have special expertise in the subject matter they administer. Employment law is a rapidly-changing and evolving body of law, and the Commission has primary jurisdiction to entertain progressive discipline theories as an element of just cause.

The term "just cause" is broad, and it encompasses a wide range of employer justifications for adverse action. The presence or absence of "just cause" in a particular situation is a factual matter, which is particularly suited to specialized inquiry before the Commission.

We do not reach the issue of whether Smith waived her theory by failing to present it to the Commission. It appears in the record, but either Smith did not aggressively pursue the theory or the Commission did not find it sufficiently relevant to the issue of the just cause requirement of the Act. We therefore leave the issue Smith posed for a future determination by the Commission.

Accordingly, the decision of the Navajo Nation Labor Commission is AFFIRMED.